# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERRY STANKEE,<br><br>Defendant. | Case No. CR14-2026<br><br>REPORT AND RECOMMENDATION |

On the 23rd day of July 2014, this matter came on for hearing on the Motion to Suppress (docket number 22) filed by the Defendant on July 9, 2014. The Government was represented by Special Assistant United States Attorney Ravi T. Narayan. Defendant Terry Stankee appeared in person and was represented by his attorney, Michael K. Lahammer.

## I. PROCEDURAL HISTORY

On June 18, 2014, Defendant Terry Stankee was charged by Indictment with conspiracy to manufacture and distribute methamphetamine (Count 1), attempting and aiding and abetting the attempt to manufacture methamphetamine (Count 2), and making available a place for the purpose of manufacturing, distributing, and using methamphetamine (Count 3). Defendant appeared on June 19, 2014 and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on August 18, 2014.

On July 9, 2014, Defendant timely filed the instant motion to suppress. The Government filed its resistance on July 18. Because of the pending motion, the trial was continued to September 15, 2014.

## II. ISSUES PRESENTED

On February 13, 2012, Delaware County law enforcement officers executed a search warrant at Defendant's rural home near Coggon, Iowa. Based on evidence seized during the search, Defendant has been charged in the instant action with three drug-related offenses. Defendant argues the search warrant was not supported by probable cause and, therefore, the seized evidence must be suppressed. The Government argues the search warrant application established probable cause for the warrant and, in any event, the *Leon* good faith exception to the exclusionary rule prohibits exclusion of the evidence.

## III. RELEVANT FACTS

The parties agree that probable cause, if it exists, must be found within the four corners of the application for search warrant.[1] Attachment A to the search warrant application set forth the following facts:

- On February 12, 2012, Deputy Sheriff Travis Hemesath was on routine patrol when he smelled the strong odor of ether while driving past the residence at 3387-110th Avenue, Coggon, Iowa.
- Deputy Hemesath then parked his vehicle on a nearby road and walked to within a close proximity of the property.
- As Deputy Hemesath got closer to the residence, the smell of ether got stronger.
- At approximately 9:15 p.m., Deputy Hemesath advised Delaware County Deputy Sheriff Brian Hillebrand of his observations.
- Deputies Hillebrand and Hemesath then went to the property to make contact with the homeowner, who Hillebrand knew to be Terry Stankee (the Defendant herein).

---

[1] The application for search warrant, attachments, endorsement, and the search warrant were introduced as Government's Exhibit 1.

- Deputies Hillebrand and Hemesath arrived at the Stankee residence at approximately 10:00 p.m.
- The deputies made contact with a white male subject, identified as Ben Conrad.
- In response to questioning by the deputies, Conrad denied having used any ether for any reason at the residence.
- Conrad was allowed to leave the residence.
- Deputy Hillebrand then made contact with an adult white male, identified as Terry Stankee.
- Stankee was told that the deputies were checking on the suspicious odor of ether.
- Stankee told the deputies that he had been working on his truck and he might have used ether.
- Deputy Hemesath was next to the unattached garage and was able to determine the strong odor of ether was coming from the garage.
- Both deputies could hear sounds of movement within the garage, and remarked on what they heard.
- Stankee said that no one was in the garage.
- Stankee was asked for consent to search the garage, which he denied.
- Deputy Hillebrand then left the residence to apply for a search warrant.
- Deputy Hillebrand knows from training and experience that ether is commonly used as a solvent in the process of manufacturing methamphetamine.
- A search of Stankee's criminal history revealed that he was convicted of possession of cocaine in 1988, and convicted of possession with intent to deliver in 1989.

- A search of Conrad's criminal history revealed that he was convicted of possession of a controlled substance in 2006.

Based on the information contained in Attachment A, a state judicial officer issued a search warrant for the described property, including the unattached garage and outbuildings.[2] The search warrant authorized officers to search for all items used in the manufacturing of methamphetamine.

## IV. DISCUSSION

### A. Probable Cause

Defendant argues that the application for search warrant does not support a finding of probable cause for the issuance of the warrant. According to Defendant, the mere odor of ether does not support a finding that contraband will probably be found at that location. The Government argues that the odor of ether, coupled with the other circumstances described in the warrant application, establishes probable cause for the warrant.

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

---

[2] The Court is unable to read the signature of the "Magistrate/Judge" who issued the search warrant, and the judicial officer is not otherwise identified.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted). In this case, no oral testimony was presented when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827.

Here, the search warrant application is driven primarily by the odor of ether, which the deputies knew from training and experience is commonly used as a solvent in the process of manufacturing methamphetamine. Deputy Hemesath could tell that the strong odor of ether was coming from the garage. Both deputies could hear sounds of movement within the garage, but Stankee denied that there was anyone in there. The application advised the judicial officer that Stankee had two old drug convictions, and the other person encountered at the scene (Conrad) had a more recent drug conviction. The issue is whether these circumstances were sufficient to conclude that there was a "fair probability that contraband or evidence of a crime" would be found at that location. *Gates*, 462 U.S. at 238.

In a number of cases, the Eighth Circuit Court of Appeals has held that an odor associated with the manufacture of methamphetamine may play a substantial role in establishing probable cause for a search warrant. In *United States v. Hessman*, 369 F.3d

1016, 1023 (8th Cir. 2004), the Court stated explicitly that "the odor of ether, when coupled with other facts, can establish probable cause." *See also United States v. Ryan*, 293 F.3d 1059, 1062 (8th Cir. 2002) (finding probable cause when officers were met with a "strong blast" of the smell of ether when the door to the house was opened, a "passerby" told one of the officers that drugs were in the house, and the officer knew that the occupant had "a history of drug convictions"). In *United States v. Nation*, 243 F.3d 467 (8th Cir. 2001), the defendant argued that the odor of ether, which is a non-controlled substance, cannot constitute probable cause. *Id.* at 470. The Court rejected the argument, concluding that the odor of ether, coupled with the other facts of the case, established probable cause. *Id.*

In *Kleinholz v. United States*, 339 F.3d 674 (8th Cir. 2003), the Court considered whether probable cause and exigent circumstances justified the officer's warrantless entry into the defendant's home. There, law enforcement had received information from an anonymous informant that methamphetamine was being manufactured in the front bedroom of a house "in the area of and similar to Kleinholz's." *Id.* at 676-77. The Court noted that law enforcement had just arrested Kleinholz's companion on the front porch for possession of marijuana and other drug paraphernalia. The Court gave particular weight, however, to the smell of ether.

> Most importantly, however, law enforcement smelled ether: a substance known to be used in the manufacture of methamphetamine. ***The smell of ether might alone support a finding of probable cause.*** But certainly such an odor coupled with other facts support a finding of probable cause.

*Kleinholz*, 339 F.3d at 677 (citations omitted) (emphasis added). *See also United States v. Clayton*, 210 F.3d 841, 845 (8th Cir. 2000) ("Once inside the house, Cook quickly developed probable cause for a search based on his immediate perception of an odor associated with methamphetamine production, his visual observation of a pickle jar, and Clayton's suspicious motion of reaching into the couch."). In *United States v. Caves*, 890

F.2d 87, 90 (8th Cir. 1989), the Court noted that "[t]he Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." (citing *Johnson v. United States*, 333 U.S. 10, 13 (1948)).

Turning to the facts in this case, Deputy Hemesath was able to smell the strong odor of ether as he drove past Defendant's residence. After Hemesath parked his vehicle and walked back to the residence, the smell of ether got stronger. When Hemesath returned to the scene with Deputy Hillebrand, he was able to determine that the strong odor of ether was coming from the garage. Both deputies could hear sounds of movement within the garage, and remarked on what they heard. Nonetheless, Stankee said that no one was in the garage. When the deputies arrived on the scene, they made contact with Ben Conrad, who they determined had a recent drug conviction. The deputies also discovered that Defendant had two old drug convictions.

The Court must determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (citing *Gates*, 462 U.S. at 238-39). The Court "gives great deference to the magistrate's probable cause determination." *Id.* In applying a "common sense approach" to the information provided in the search warrant application, I believe that there was a "fair probability" that contraband would be found on Defendant's property. *United States v. Dukes*, ____ F.3d ____, 2014 WL 3361173 (8th Cir., decided July 10, 2014). Accordingly, probable cause existed for the issuance of the search warrant and, therefore, Defendant's motion to suppress should be denied.

### B. Good-Faith Exception to the Exclusionary Rule

As set forth above, I believe the search warrant issued on February 13, 2012 was supported by probable cause. Accordingly, the warrant was valid and the search was lawful. Because there was no Fourth Amendment violation, I believe it is unnecessary to consider whether the *Leon* good-faith exception precludes suppression of the seized

evidence.[3] Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" will not be suppressed. *Id.* at 922. An officer's reliance on a search warrant is not "objectively reasonable," however, if one of four circumstances is present:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is

---

[3] The issues of probable cause and the good-faith exception may be addressed by the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good-faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g., United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006).

> "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923).

At the time of hearing, Defendant acknowledged that the first, second, and fourth circumstances described in *Grant* have no application here. That is, Defendant does not assert that the warrant application included false statements, that the issuing magistrate "wholly abandoned his judicial role," or that the warrant had facial deficiencies. Rather, Defendant relies on the third circumstance described in *Grant*. That is, Defendant claims that the search warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), the Court found that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Id.* at 1122-23 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)). As set forth above, I believe the search warrant application and supporting attachments establish probable cause to search Defendant's property. Even if the district court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." While Defendant now asks the Court to make fine judgments regarding the relative weight of the facts on the scale of probable cause, it was not "entirely unreasonable" for the officers to rely on the judicial magistrate's determination that probable cause had been established. *See United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.").

### C. Summary

In summary, I believe that the strong odor of ether, which is known to be associated with the manufacture of methamphetamine, coupled with Defendant's denial that there was anyone in the garage after both deputies asked him about movement in the garage, supports a finding that there was a fair probability contraband would be found on the property. Because the search warrant was supported by probable cause, there was no Fourth Amendment violation. Even if probable cause was lacking, however, it was not "so lacking" as to render the deputies' belief in its existence "entirely unreasonable." Accordingly, application of the *Leon* good faith doctrine precludes exclusion of the evidence. Therefore, I respectfully recommend that the motion to suppress be denied.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Suppress (docket number 22) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on July 23, 2014.*

DATED this 28th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA