# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. TERRY STANKEE, Defendant. | No. 14-CR-2026-LRR<br><br>**ORDER** |

## I. INTRODUCTION

The matter before the court is Defendant Terry Stankee's Objections (docket no. 35) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 29), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 22).

## II. RELEVANT PROCEDURAL BACKGROUND

On June 17, 2014, a grand jury returned an Indictment (docket no. 2) charging Defendant with knowingly and intentionally conspiring to manufacture and distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); knowingly and intentionally attempting and aiding and abetting the attempt to manufacture a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2(a); and knowingly and intentionally making a place available for use, with and without compensation, for the purpose of unlawfully manufacturing, distributing and using a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 856(a)(2). The Indictment also contains a forfeiture allegation. On July 9, 2014, Defendant filed the Motion. On July 18, 2014, the government filed a Resistance (docket no. 24). On July 23, 2014, Judge

Scoles held a hearing on the Motion. *See* July 23, 2014 Minute Entry (docket no. 25). Defendant appeared in court with his attorney, Michael Lahammer. Special Assistant United States Attorney Ravi Narayan represented the government. On July 28, 2014, Judge Scoles issued his Report and Recommendation, which recommends that the court deny the Motion. On August 12, 2014, Defendant filed his Objections. The Report and Recommendation and the Objections are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

The only dispute in this case is whether the affidavit submitted by Deputy Sheriff Brian Hillebrand supported the state judicial magistrate's determination that officers had probable cause to search Defendant's residence. As summarized by Judge Scoles, the affidavit contained the following information:

> On February 12, 2012, Deputy Sheriff Travis Hemesath was on routine patrol when he smelled the strong odor of ether while driving past the residence at 3387-110th Avenue, Coggon, Iowa.
>
> Deputy Hemesath then parked his vehicle on a nearby road and walked to within a close proximity of the property.
>
> As Deputy Hemesath got closer to the residence, the smell of ether got stronger.
>
> At approximately 9:15 p.m., Deputy Hemesath advised Delaware County Deputy Sheriff Brian Hillebrand of his observations.
>
> Deputies Hillebrand and Hemesath then went to the property to make contact with the homeowner, who Hillebrand knew to be Terry Stankee (the Defendant herein).
>
> Deputies Hillebrand and Hemesath arrived at the Stankee residence at approximately 10:00 p.m.
>
> The deputies made contact with a white male subject, identified as Ben Conrad.
>
> In response to questioning by the deputies, Conrad denied having used any ether for any reason at the residence.
>
> Conrad was allowed to leave the residence.
>
> Deputy Hillebrand then made contact with an adult white male, identified as Terry Stankee.

---

[1] The court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

> Stankee was told that the deputies were checking on the suspicious odor of ether.
>
> Stankee told the deputies that he had been working on his truck and he might have used ether.
>
> Deputy Hemesath was next to the unattached garage and was able to determine the strong odor of ether was coming from the garage.
>
> Both deputies could hear sounds of movement within the garage, and remarked on what they heard.
>
> Stankee said that no one was in the garage.
>
> Stankee was asked for consent to search the garage, which he denied.
>
> Deputy Hillebrand then left the residence to apply for a search warrant.
>
> Deputy Hillebrand knows from training and experience that ether is commonly used as a solvent in the process of manufacturing methamphetamine.
>
> A search of Stankee's criminal history revealed that he was convicted of possession of cocaine in 1988, and convicted of possession with intent to deliver in 1989.
>
> A search of Conrad's criminal history revealed that he was convicted of possession of a controlled substance in 2006.

Report and Recommendation at 2-4 (formatting omitted).

### *V. ANALYSIS*

Defendant argues that the judge who issued the search warrant did not have probable cause to issue the warrant and that the good-faith exception does not apply because no reasonably well-trained officer could have believed that the facts averred established probable cause.

### A. *Probable Cause*

In his Objections, Defendant argues that Judge Scoles erroneously found that the magistrate who issued the search warrant had probable cause to issue the warrant.

"Probable cause to issue a search warrant exi[s]ts if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnell*, 726 F.3d 1054, 1056 (8th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In determining whether probable cause exists, courts look to the totality of the circumstances and "apply a common sense approach . . . considering all relevant circumstances." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (quoting *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005) (internal quotation marks omitted)). A reviewing court must "pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit [its] inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 236). The Eighth Circuit Court of Appeals has held that "the odor of ether, when coupled with other facts, can establish probable cause." *United States v. Hessman*, 369 F.3d 1016, 1023 (8th Cir. 2004); *see also United States v. Ryan*, 293 F.3d 1059, 1062 (holding that "the odor of ether, coupled with the other facts of the case, established probable cause"). Because the parties agree that the magistrate judge who issued the search warrant relied solely on the Application for Search Warrant (docket no. 22-2) to issue the warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)) (internal quotation marks omitted).

Defendant states that the following three facts asserted in the Application for Search Warrant do not amount to probable cause: (1) "officers smelled ether and assert their

5

knowledge that ether can be used in the production of methamphetamine"; (2) "officers heard a noise coming from the garage, but [Defendant] denied that anyone was present inside the garage"; and (3) Defendant "had a 1988 conviction for possession of cocaine and a 1989 conviction for possession with intent to deliver an unspecified controlled substance and that the other person encountered at the scene . . . , Ben Conrad, had a 2006 conviction for possession of an unspecified controlled substance." Brief in Support of Objections (docket no. 35-1) at 1-2. In support of the argument, Defendant contends that "the smell of ether, standing alone, is [not] sufficient for probable cause." *Id.* at 4. He further argues that "[t]here are a myriad of innocent reasons why . . . someone might be in a garage," Defendant's "drug convictions were old and were not for manufacturing" and "Conrad's drug conviction[, although] more recent . . . was also not for manufacturing." *Id.* at 3.

The court agrees that there could be many reasons why someone might be in a garage, and a multitude of reasons may explain a strong odor of ether. However, the question is not whether there are innocent explanations for the relevant facts in isolation. Rather, the question is whether the totality of the circumstances creates a fair probability that contraband or evidence of a crime will be found. The facts of this case indicate that Deputy Hemesath smelled a strong odor of ether emanating from Defendant's residence as he drove by. Upon walking to the residence, the smell of ether became stronger. Deputies Hemesath and Hillebrand both remarked that they heard sounds coming from the garage that sounded like movement. Defendant responded that no one was in the garage. The deputies interacted with Conrad and determined that he had recently been convicted on a drug-related charge. The deputies also discovered that Defendant had previously been convicted of two drug-related charges. Based on these circumstances, the court agrees with Judge Scoles that "probable cause existed for the issuance of the search warrant." Report and Recommendation at 7.

## B. *Good Faith Exception*

Defendant argues that Judge Scoles erroneously found that the good-faith exception applies. The good-faith exception precludes the suppression of evidence when the evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The court has already found that the magistrate who issued the search warrant had probable cause to issue the warrant. Thus, for the reasons that the search warrant was valid, the court finds that the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 35) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 29) is **ADOPTED**; and

(3) The Motion (docket no. 22) is **DENIED**.

**DATED** this 3rd day of September, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA